IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

MIAMI BEACH COMMUNITY DEVELOPMENT
CORPORATION, INC.

    Plaintiff,

v.

USI INSURANCE SERVICES, LLC, AMRISC, LLC,
and AFCO PREMIUM CREDIT, LLC.

    Defendants

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, MIAMI BEACH COMMUNITY DEVELOPMENT COPRORATION, INC., by and through undersigned counsel and in support of its claims for relief against the Defendants, USI INSURANCE SERVICES, LLC AMRISC, LLC, and AFCO PREMIUM CREDIT, LLC, states as follows:

    1.    This Court has original jurisdiction over the action pursuant to 28 U.S.C. § 1331, 28 U.S.C. §1343, and 42 U.S.C. §3613(a) for Plaintiff's claims arising under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 et seq., and Declaratory Judgment Act, 28 U.S.C. §2201, and supplemental claims jurisdiction under 28 U.S.C. § 1367 for Plaintiff's claims under Chapter 11A of the Miami-Dade County Code of Ordinances.

    2.    Venue is proper in the Southern District of Florida, under 28 U.S.C. § 1391(b) because the claims arose in this judicial district.

    3.    The Plaintiff, MIAMI BEACH COMMUNITY DEVELOPMENT CORPORATION, INC. (hereinafter "Miami Beach CDC") is a Florida Not for Profit Corporation,

licensed to do and doing business in Miami-Dade County.

4. The Defendant, USI INSURANCE SERVICES (hereinafter "USI"), is a Foreign Limited Liability Company licensed to do and doing business in Miami-Dade County as an insurance agency as defined by Fla. Stat. § 626.015.

5. The Defendant, AMRISC LLC (hereinafter "AmRisc"), is a Foreign Limited Liability Company and is an insurance underwriter and a managing general agent as defined by § 626.015, Fla. Stat.

6. The Defendant, AFCO PREMIUM CREDIT, LLC (hereinafter "AFCO"), is a Foreign Limited Liability Corporation licensed and doing business in Miami-Dade Florida. AFCO is a premium finance company as defined by Fla. Stat. § 627.826.

7. Plaintiff, Miami Beach CDC is a nonprofit organization founded in 1981, that has the purpose of creating stable, vibrant and healthy communities by developing, financing and operating affordable, program-enriched housing for families, seniors and people with disabilities who lack the economic resources to access quality, safe housing opportunities. To further its purpose, the Miami Beach CDC receives significant funding from federal, state, and local government subsidies in various forms, including low-interest rate loans, grants, and rent subsidies for qualifying very low, low and moderate-income tenants.

8. Plaintiff, Miami Beach CDC owns and operates 323 dwelling units at the following housing facilities:

    a. Crespi Park Apartments, 7900 & 7920 Crespi Blvd, Miami Beach

    b. The Jefferson, 542 Jefferson Ave., Miami Beach

    c. Meridian Place, 530 Meridian Ave, Miami Beach

    d. Westchester Apartments, 516 15th St., Miami Beach

    e.   1551 Pennsylvania Apartments, 1551 Pennsylvania Ave., Miami Beach

    f.   532 Michigan Ave, 530/532 Michigan Ave

    g.   Camacho Apts., 126 SW 8 Avenue, Miami

    h.   Villa Maria, 2800 Collins Ave. Miami Beach

    i.   The Allen, 2001Washington Avenue, Miami Beach

    j.   Villa Matti, 221 28th St., Miami Beach

9.     In 2017, Miami Beach CDC retained USI Insurance Services as its insurance broker to procure all-risk coverage for its properties.

10.     USI Insurance Services contacted AmRisc as the managing agent to underwrite the property and liability insurance risk for Plaintiffs' residential properties and to produce, directly or indirectly, a policy to cover the Miami Beach CDC's residential properties, and acted as the agent of Defendants AmRisc and AFCO Premium Financing.

11.     On January 12, 2017, USI Insurance Services produced a residential property and liability insurance policy to cover risks to the Plaintiffs' residential properties, and AmRisc served as the underwriter and managing agent for the insurers.

12.     The premiums for all of the insurance policies held by Miami Beach CDC were financed through AmRisc's affiliated premium financing company, AFCO Premium Financing.

13.     The policy was renewed in January 2018 and January 2019.

14.     Miami Beach CDC paid AFCO Premium Financing $368,427.99 in 2017; $374,950.57 in 2018, $441,856.45 in 2019, and 282,346.82 for the first six months of 2020.

15.     On January 2, 2020, Miami Beach CDC was informed by the Senior Vice President of Commercial Lines of Defendant USI that the underwriter Chronos, a division of AmRisc, was objecting to providing property and liability insurance coverage for some of Plaintiffs' residential

properties because Chronos' inspections of the Miami Beach CDC properties demonstrated that some of the properties were completely (100%) Section 8 subsidized, while other properties had more than 30% of the residents using their Section 8 vouchers to subsidize their rent.

16. One of the requirements in the insurance policy's eligibility endorsement was "Warrant no more than 30% Section 8 subsidized units in any one Location."

17. Upon discovering that Miami Beach CDC had many properties with tenants that had over 30% of its units subsidized by Section 8, AmRisc terminated Plaintiff's insurance coverage as of June 2020.

18. As a result of terminating coverage in the midst of hurricane season, Miami Beach CDC was forced to obtain new coverage with unfavorable terms and conditions.

19. As a result of AmRisc terminating coverage, their affiliated company, AFCO Premium Financing, refused to continue financing the premiums for any of the policies of the Miami Beach CDC. Accordingly, Plaintiff was forced to finance its new coverage with another financier, whose finance rate is more than double that of AFCO and requires a markedly higher cash down payment.

20. Defendants and their property casualty affiliates used, and continue to use, insurance underwriting criteria that deny or impose different terms and conditions for residential property and liability habitational insurance to landlords who lease their residential rental units to tenants that rely on the federal Section 8 Program to help pay their rent. Such discrimination is specifically prohibited by law in Miami-Dade and has a disparate impact based on race and ethnicity in violation of the federal Fair Housing Act because of the racial makeup of Section 8 participants and Section 8 projects in the Miami-Dade County area.

## FACTUAL ALLEGATIONS
### Section 8 Program Overview

21. In 1974, Congress enacted the federal Section 8 program as the federal government's primary program to assist low-income families, the elderly, and individuals with disabilities in affording decent, safe, and sanitary housing in the private rental market.

22. Although there are several distinct Section 8 programs, the Section 8 rental assistance is either "tenant-based" or "project-based."

23. With project-based Section 8, the landlord has a contract directly with the United States Department of Housing and Urban Development ("HUD") to subsidize the rents at the property. Tenants pay approximately 30% of their income as rent. Because the subsidy is attached to the unit, if the tenant moves out, the tenant will no longer have a rental subsidy. The next tenant that moves into the unit will have a rental subsidy. *See* 42 U.S.C. §1437f, *see also* 24 C.F.R. § Parts 880, 881, 883, 884 & 886.

24. Miami Beach CDC has two properties which have project-based Section 8 contracts with HUD: Villa Maria and Villa Matti. At each of these properties, 100% of the tenants have their rents subsidized through the Section 8 program.

25. Tenant-based Section 8 is also known as the Housing Choice Voucher Program or the Section 8 voucher program. In a *See* 42 U.S.C. § 1437f(o); *see also* 24 C.F.R. §§ 982.1 *et seq*.

26. Participants in the Housing Choice Voucher program use Section 8 vouchers to find their own housing in the private rental market. Section 8 voucher participants are free to choose any housing that meets the program's requirements. The tenant signs a lease with the landlord. The tenant pays approximately 30% of their income as rent to the landlord and the PHA pays the housing subsidy directly to the landlord. If the tenant decides to move, the tenant

27.     Miami Beach CDC rents to many tenants who have Section 8 vouchers. As of December 2020, Miami Beach CDC had 54 tenants using Section 8 vouchers to subsidize the rent. These Section 8 tenants have vouchers from either the Housing Authority for the City of Miami Beach or the Miami-Dade County's Public Housing and Community Development. (Miami-Dade County serves as the county-wide PHA.)

28.     Rental assistance provided to landlords through the Section 8 Program, either directly or through a tenant, is considered a source of income under Chapter 11A of the Miami-Dade County Code.

### *Section 8 Eligible Households in the Miami-Dade Area are Disproportionately Racially and Ethnically Concentrated*

29.     In 2019, Miami-Dade County had an estimated population of 2,716,940 people. Out of this population, 12.8% are white, 15.3% are Black, and 69.4% are Latino. The median household income for a household in Miami Dade was: $87,181 for a white family, $37,839 for a Black family, and $ 53,753 for a Latino family.[1]

30.     However, the City of Miami Beach population is markedly whiter and wealthier than the rest of Miami Dade County, with an estimated population of 88,885 persons, of which, 30.3% are White, 3.1% are Black, and 61.1% are Latino.[2]

31.     To be eligible for Housing Choice Vouchers, an applicant must either be a

---

[1] Renter Miami-Dade County, Population, Households, Renters, and Median Household Income by Race/Ethnicity, 2019, American Community Survey
[2] Renter Miami Beach, Population, Households, Renters, and Median Household Income by Race/Ethnicity, 2019, American Community Survey[3] Very low-income is defined as 50% or less of the Area Median Income (AMI), adjusted for family size.  Extremely low income had been defined as 30% or less of the AMI (adjusted for family size)

household income level of very low-income or extremely low income.[3]

32. Black households are 2.76 times more likely than White households to be eligible for extremely low-income housing vouchers and 2.49 times more likely than White households to be eligible for very low-income housing vouchers.

33. HUD provides Housing Choice Voucher program funding to local public housing authorities ("PHAs"), which administer the Housing Choice Voucher program locally and issue vouchers to qualified individuals and families. In distributing Housing Choice Vouchers, the Miami-Dade Public Housing Authority distributes the 15,809 vouchers that it administers 57% of vouchers to Black households.[4] This is in comparison to the population of Miami-Dade County which is 12.8% White, 15.3% Black, and 69.4% Latino.

34. Because of its participation in the Housing Choice Voucher Program, the Plaintiff Miami Beach CDC's tenant population is disproportionately racially concentrated as compared to the City of Miami Beach population as a whole. Plaintiff's tenant population is 13.2 % white and 86.8 % Black and Latino, while the racial composition of the City of Miami Beach is 30.03% White, 3.1% Black, and 61.1% Latino.

35. The Defendants' refusal to sell property and liability insurance to Plaintiff because Plaintiff's subsidized rental units in any one location contained more than 30% Section 8 tenant population has a disparate impact based on race or ethnicity. Because participation in the Section 8 program in Miami-Dade County is disproportionately based on race and/or ethnicity, as compared to the racial concentration of the population in the area, establishing and implementing

---

[3] Very low-income is defined as 50% or less of the Area Median Income (AMI), adjusted for family size. Extremely low income had been defined as 30% or less of the AMI (adjusted for family size)

[4] Miami-Dade County: Public Housing and Community Development- Housing Choice Voucher Program Monthly Management Executive Summary Report = February 2020.

any eligibility rule for property and liability insurance based on Section 8 status is equivalent to establishing and implementing eligibility based on race or ethnicity of tenants.

36. Stated differently, using Section 8 participation in the Miami-Dade County area as a disqualifying criterion for the purchase of property or liability insurance is equivalent to using race and ethnicity as a disqualifying criterion for the purchase of property or liability insurance, which violates both the federal Fair Housing Act and the Miami-Dade County Code.

**The Defendants' Policies Have Harmed, and Continue to Cause Harm, to Plaintiff Miami Beach CDC And Other Landlords Who Participate in Section 8 Programs.**

37. Upon receiving the cancellation notice, Plaintiff immediately began looking for an alternative insurance policy to cover its properties. Plaintiff subsequently obtained a commercial general liability policy on less favorable terms than the cancelled AmRisc policy.

38. Moreover, other rental property owners like Plaintiff Miami Beach CDC who are unable to obtain suitable property and casualty insurance for their properties because they have a high concentration of Section 8 participants expose both themselves and their tenants to the risks of owning and residing in uninsured or underinsured buildings.

39. The Miami Beach CDC's purpose of creating stable, vibrant and healthy communities by developing, financing and operating affordable, program-enriched housing for families, seniors and people with disabilities who lack the economic resources to access quality housing is frustrated by the defendants' discriminatory underwriting criteria, as these policies and practices violate federal and Miami-Dade County fair housing laws, undermine rather than advance equal housing opportunities, perpetuate the harms of residential segregation,and impose disproportionate injuries on the Miami Beach CDC's tenants including its low-income minority households that are disproportionately affected.

40. Defendants' use of discriminatory underwriting and eligibility criteria, and

subsequent denial of financing, constitutes unlawful discrimination based on source of income, as prohibited by the Miami-Dade County Code. In addition, these underwriting criteria have a disparate impact on minorities on the basis of color and race, in violation of both the FHA and the Miami-Dade County Code. Furthermore, Defendants' underwriting and eligibility rules have a disproportionately negative effect on the attempts to desegregate the City of Miami Beach's predominantly White and Hispanic city. Such acts are both racially discriminatory and a violation of Miami-Dade's prohibition of discrimination based on source of income.

41. Plaintiff, Miami Beach CDC has retained Disability Independence Group, Inc, Legal Services of Greater Miami, Inc., and Dane Law, LLC, to represent them in this action, and have agreed to pay them a reasonable fee for their services incurred herein.

## CAUSES OF ACTION

### First Cause of Action
### Discrimination Based on Race and Source of Income in Violation of the Miami-Dade County Code, § 11A-12

42. Plaintiff realleges and incorporates by reference paragraphs 1 to 41 of this Complaint.

43. Defendants' policy and practice of using the presence of tenants participating in the Section 8 Program as an underwriting criterion for property insurance of residential rental properties in Miami Dade County violates the Miami Dade County Code's prohibition on housing discrimination based on race, color or source of income, by:

  a. Discriminating against a person in the terms, conditions, or privileges of the sale, purchase, rental or lease or any dwelling, or in the furnishing of facilities or services in connection therewith (11A-12(b));

  b. Refusing to lend money, whether or not secured by mortgage, or otherwise

    refuse to make funds available for the purchase, acquisition, construction, alteration, improvement, repair or maintenance of any dwelling, to impose different terms or conditions of such financing or refuse to provide title or insurance relating to the ownership or use of any interest in any dwelling, or to refuse to provide appraisal or brokerage services (11A-12(e));

c. Making, publishing, printing, circulating, posting, mailing, or cause to be made, published, printed, circulated, posted or mailed, any notice, statement or advertisement, or announcing a policy, or signing or using a form of application for the sale, purchase, rental, lease or financing of any dwelling, or making a record of inquiry in connection with the prospective sale, purchase, rental, lease or financing of any housing accommodation which indicates any discrimination, any discriminatory preference, any intent to discriminate or any intent to make a discriminatory preference;(11A-12(g))

d. Discriminating in any financial transaction involving real property because of its location, or to "red-line"(11A-12(h))

e. Aiding, inciting, compelling or coercing any person to engage in any of the practices prohibited by this chapter, or obstructing or preventing any person from complying with the provisions of this chapter or any other issued thereunder; or (11A-12(m))

44. Defendants' residential property insurance underwriting criteria, and subsequent denial of financing, deny coverage for residential dwellings whereindividuals and households participating in the Section 8 Program reside, compelling landlords to evict or reject participating tenants in order to obtain insurance, leave their buildings with participating tenants uninsured, or

obtain inferior, significantly more expensive coverage on the secondary excess and surplus market. In doing so, Defendants discriminate on the express basis of source of income—namely, participation in the Section 8 Program.

45. Furthermore, Defendants' use of discriminatory insurance underwriting criteria, and denial of financing based on this criterion, actually or predictably results in a significantly disproportionate impact on minorities on the basis of both race and color. These underwriting criteria have harmed and continue to impose disproportionate harm on these groups because the underwriting criteria make rental housing unavailable to Section 8 Program participants and in the City of Miami Beach and in Miami-Dade County, these protected groups are disproportionately likely to participate in the Section 8 Program as compared to the relevant non-protected groups.

46. Similarly, Defendants' criteria disproportionately harm neighborhoods statistically more likely to have rental buildings with tenants participating in the Section 8 Program, as landlords must operate without property insurance or pay higher premiums for secondary market policies, receiving fewer benefits and protections from those non-standard policies. These policies and practices therefore constitute impermissible "red-lining" of such neighborhoods in violation of the DCHRA's prohibition on discrimination based on the place of residence or business of any individual.

47. Defendants' underwriting and financing criteria do not have a substantial, legitimate, nondiscriminatory purpose. Even if Defendants use this underwriting criterion for some business purpose, other, less discriminatory alternatives are and have been available to achieve those objectives.

48. Defendants' conduct was intentional, willful, and made in reckless disregard of the known rights of others.

49. Due to Defendants' discriminatory actions, Plaintiff Miami Beach CDC has suffered actual damages as a result of the additional costs and payment terms associated with purchasing new insurance.

50. As a result of the Defendants' actions, Plaintiff, Miami Beach CDC will continue to suffer interference with its mission of creating stable, vibrant and healthy communities by developing, financing and operating affordable, program-enriched housing. Not only will it be required to pay substantially more money for adequate insurance coverage, these policies will styme further development of affordable property within the City of Miami Beach.

WHEREFORE, Plaintiff, MIAMI BEACH COMMUNITY DEVELOPMENT COPRORATION, INC., respectfully prays that this Court grants the following relief against Defendants, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants, USI INSURANCE SERVICES, LLC., AMRISC, LLC., and AFCO PREMIUM CREDIT, LLC., practices, policies and procedures have subjected Plaintiffs to discrimination in violation of Chapter 11A-12 of the Miami-Dade County Code and permanently enjoining the Defendants:

    a. To cease discrimination against Plaintiff and other landlords who choose to participate in the Section 8 Program.

    b. To publish notice to all policy holders and clients of the Defendants and any of their parents or subsidiaries to advise that such practice is unlawful.

    c. To publish notice in a newspaper of general distribution in Miami-Dade that that such practice is unlawful

    d. Award actual damages to plaintiff;

    e. Award reasonable costs and attorneys' fees; and

f. Award any and all other relief that may be necessary and appropriate.

**Second Cause of Action**
**Discrimination Based on Race and Color in Violation of the**
**Fair Housing Act, 42 U.S.C. § 3601 *et seq.***

51. Plaintiff realleges and incorporates by reference paragraphs 1 to 41 of this Complaint.

52. The Fair Housing Act makes it unlawful, *inter alia*, "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin," 42 U.S.C. § 3604(b), including by employing any policy or practice that has a disparate impact on one or more of these protected groups. In addition, the Act makes it "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a).

53. As set forth above, Defendants' policies and practices of using discriminatory underwriting, eligibility and financing criteria for residential property and liability insurance deny or restrict insurance coverage to housing providers who rent housing to individuals or households participating in the Section 8 Program, forcing those housing providers to obtain more expensive insurance or to forego habitational insurance altogether on properties in which Section 8 Program recipients reside.

54. As a result, Defendants' policies and practices of using these discriminatory underwriting, eligibility, and financing criteria for residential property and liability insurance actually and predictably results in a significantly disproportionate impact on the basis of race and

color, as individuals and households participating in the Section 8 Program in Miami Dade County and the City of Miami Beach are disproportionately African- American.

55. Because Defendants' policies and practices of using these discriminatory underwriting, eligibility, and financing criteria for residential property and liability insurance are based, at least in part, on pernicious stereotypes about Section 8 Program participants, the protected groups that disproportionately make up the population of Section 8 Program, and the neighborhoods in which Section 8 Program are disproportionately likely to live, Defendants' policies and practices are intended to and have the effect of denying, increasing the cost of, or otherwise making unavailable property and liability insurance covering residential properties in which Section 8 Program participating households reside.

56. Defendants' policies and practices of using these discriminatory underwriting, eligibility and financing criteria for residential property and liability insurance, even if facially neutral, have had and continue to have a discriminatory effect on Minority individuals and households in Miami-Dade County because the underwriting, eligibility, and financing criteria make rental housing unaffordable, unavailable, or uninsured and/or less insured than comparable rental housing where no Section 8 Program participants reside, as this protected group is disproportionately more likely to participate in the Section 8 Program as compared to the relevant non-protected groups.

57. Defendants' policies and practices of using these discriminatory underwriting, eligibility and financing criteria for residential property and liability insurance also predictably and disproportionately harm the City of Miami Beach by thwarting its efforts to reverse the history of segregation and exclusion of Minority families from the city.

58. Defendants' policies and practices of using these discriminatory underwriting

criteria for residential property and liability insurance do not have a substantial, legitimate, nondiscriminatory objective. Even if Defendants utilize these underwriting, eligibility, or financing criteriafor some business purpose, other, less discriminatory alternatives are and have been available to Defendants to achieve any such objective.

59. Defendants' conduct was intentional, willful, and made in reckless disregard ofthe known rights of others. Refusing to insure, or canceling the insurance of, or charging higher rates to, landlords on thebasis that they rent to tenants who participate in the Section 8 Program.

60. Due to Defendants' discriminatory actions, Plaintiff Miami Beach CDC has suffered actual damages as a result of the additional costs and payment terms associated with purchasing new insurance.

61. As a result of the Defendants' actions, Plaintiff, Miami Beach CDC will continue to suffer interference with its mission of creating stable, vibrant and healthy communities by developing, financing and operating affordable, program-enriched housing. Not only will it be required to pay substantially more money for adequate insurance coverage, these policies will stymie further development of affordable dwellings within the City of Miami Beach.

WHEREFORE, Plaintiff, MIAMI BEACH COMMUNITY DEVELOPMENT COPRORATION, INC., respectfully prays that this Court grants the following relief against Defendants, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants, USI INSURANCE SERVICES, LLC AMRISC, LLC, and AFCO PREMIUM CREDIT, LLC practices, policies and procedures have subjected Plaintiffs to discrimination in violation of the Fair Housing Act and permanently enjoining the Defendants:

    a. To cease discrimination against Plaintiff and other landlords who rent to Section 8 Program participants.

b.  Award actual damages to Plaintiff;

c.  Award punitive damages to Plaintiff.

d.  Award reasonable costs and attorneys' fees; and

e.  Award any and all other relief that may be necessary and appropriate.

PLAINTIFFS DEMAND A TRIAL BY JURY FOR ALL ISSUES FOR WHICH A TRIAL BY JURY IS PERMITED.

Respectfully submitted this 4th day of August, 2021.

| | |
|---|---|
| By: */s/ Matthew W. Dietz*<br>MATTHEW W. DIETZ, ESQ.<br>Florida Bar No.: 0084905<br>Disability Independence Group, Inc.<br>2990 Southwest 35th Avenue<br>Miami, Florida 33133<br>Tel: (305) 669-2822<br>Mdietz@justDIGit.org<br>aa@justdigit.org<br><br><br>*Counsel for Plaintiff* | By: */s/Jeffrey M. Hearne*<br>Jeffrey M. Hearne, Esq.<br>FL bar No.: 512060<br>Guerby Noel, Esq.<br>FL Bar No.: 115776<br>Legal Services of Greater Miami, Inc.<br>4343 W. Flagler St., Ste. 100<br>Miami, FL 33134<br>Phone: (305) 438-2403<br>jhearne@legalservicesmiami.org<br>gnoel@legalservicesmiami.org<br><br>*Counsel for Plaintiff* |